UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
LISA F.,

                 Plaintiff,       <u>DECISION AND ORDER</u>
                                         7:20-CV-10441-GRJ

       v.

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.
------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In October of 2018, Plaintiff Lisa F.[1] applied for Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by Ny Disability, LLC, Daniel Berger, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 13).

This case was referred to the undersigned on October 24, 2022. Presently pending are the parties' Motions for Judgment on the Pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket Nos. 29,

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

37). For the following reasons, Plaintiff's motion is due to be granted, the Commissioner's motion is due to be denied, and this case is remanded for calculation of benefits.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on October 23, 2018, alleging disability beginning October 1, 2018. (T at 15).[2]  Plaintiff's application was denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on January 24, 2020, before ALJ Sandra M. McKenna. (T at 33-55). Plaintiff appeared with an attorney and testified. (T at 39-49, 53). The ALJ also received testimony from Andrew Vaughn, a vocational expert. (T at 49-53).

### B.    ALJ's Decision

On February 5, 2020, the ALJ issued a decision denying the application for benefits. (T at 12-32).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since October 23, 2018 (the application date)(T at 17).  The ALJ concluded that Plaintiff's osteoarthritis of the lumbar spine, obesity, seizure disorder, hypertension, and bipolar disorder were severe impairments as defined under the Act. (T at 17).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 18.

The ALJ found, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 18).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR 404.1567 (a), with the following limitations: she requires the use of a cane for ambulation; she can climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds; she can balance, stoop, kneel, crouch, and crawl occasionally; she can perform simple, routine and repetitive tasks, but not at a production rate pace, with no more than simple work-related decisions; and no more than occasional interaction with supervisors, coworkers, and the public. (T at 14-15). The ALJ noted that Plaintiff had no past relevant work. (T at 27).

Considering Plaintiff's age (41 on the application date), education (high school, able to communicate in English), work experience (no past relevant work), and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 27).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits

for the period between October 23, 2018 (the application date) and

February 5, 2020 (the date of the ALJ's decision). (T at 28).  On October 5,

2020, the Appeals Council denied Plaintiff's request for review, making the

ALJ's decision the Commissioner's final decision. (T at 1-6).

### C.   Procedural History

Plaintiff commenced this action, by and through her counsel, by filing

a Complaint on December 10, 2020. (Docket No. 1).  On May 19, 2022,

Plaintiff filed a motion for judgment on the pleadings, supported by a

memorandum of law. (Docket No. 29, 30).  The Commissioner interposed a

cross-motion for judgment on the pleadings, supported by a memorandum

of law, on September 16, 2022. (Docket No. 37, 38).  On October 7, 2022,

Plaintiff submitted a reply memorandum of law in further support of her

motion. (Docket No. 39).

## II.  APPLICABLE LAW

### A.   Standard of Review

"It is not the function of a reviewing court to decide de novo whether a

claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

The court's review is limited to "determin[ing] whether there is substantial

evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566
F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings,
which are considered conclusive if supported by substantial evidence. *See*
42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla"
and "means such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*,
562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting
*Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by
substantial evidence, the reviewing court is required to examine the entire
record, including contradictory evidence and evidence from which
conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145,
151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has
applied an improper legal standard," or when the ALJ's rationale is unclear,
remand "for further development of the evidence" or for an explanation of
the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.
1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises one main argument in support of her request for reversal of the ALJ's decision.  Plaintiff contends that the ALJ's assessment of the medical opinion evidence regarding her mental health impairments was flawed.[3]

---

[3] The balance of Plaintiff's contentions are either derived from, or incidental to, this challenge.

### A.   Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In the present case, Dr. Arcangelo Lubrano, a treating psychiatrist, completed a medical source statement in September of 2018.  At that time, Dr. Lubrano had been treating Plaintiff monthly for two and a half years. (T at 566).  He diagnosed severe bipolar disorder and explained that Plaintiff had an explosive personality, flashbacks, and severe racing thoughts. (T at 566-67).

Dr. Lubrano opined that Plaintiff would be expected to miss work more than 3 times per month due to her impairments or treatment. (T at 567).  He assessed moderate limitation in Plaintiff's ability to understand, remember, and carry out very short, simple instructions; extreme limitation with respect to maintaining attention and concentration for extended periods, extreme limitation in her ability to maintain regular attendance and be punctual, and extreme impairment with respect to completing a normal workday and workweek without interruptions from psychologically based symptoms. (T at 568).

Dr. Lubrano reported that Plaintiff had extreme or marked impairment in all domains of social functioning and constant deficiencies of concentration, persistence, and pace. (T at 568-69).  He predicted continual episodes of deterioration or decompensation in work or work-like settings. (T at 568-69).

In November of 2019, Debra Rivera-Oquendo, a treating family nurse practitioner, completed a medical source statement in which she assessed essentially the same marked and extreme psychiatric limitations as did Dr. Lubrano. (T at 1022-24, 1027).

The ALJ considered the assessments of Dr. Lubrano and Ms. Rivera-Oquendo "not persuasive." (T at 25-26).  The Court concludes that the

ALJ's determination is not supported by substantial evidence and is not consistent with applicable law.

The Second Circuit has recognized the value of treating source opinions when reviewing claims involving mental impairments. *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations.").

Although the treating physician rule no longer applies, this important principle persists, as the opportunity to observe and treat the claimant constitutes important "support" for a medical opinion under the new standard. *See, e.g., Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 U.S. Dist. LEXIS 32884, at *28 (N.D.N.Y. Feb. 22, 2021).

"As the amended regulations note, '[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.'" *Id*. (quoting 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v))); *see also Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 U.S. Dist. LEXIS 19212, at *25-26 (S.D.N.Y. Jan. 29, 2021)("A survey of … cases … show[s]

that while the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar.")(collecting cases).

"Even though ALJs are no longer directed to afford controlling weight to treating source opinions—no matter how well supported and consistent with the record they may be—the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)(quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)).

Here, the ALJ gave two reasons to support her conclusion that the assessments of the treating mental health providers were "not persuasive." She found the opinions "not supported" by the treatment notes and "inconsistent" with the opinions of the consultative psychiatric examiner and State Agency review physicians. (T at 24-25).

The ALJ overrated the relevance of Plaintiff's ability to maintain appropriate affect during relatively brief, relatively infrequent encounters with supportive mental health professionals. While the record generally

describes Plaintiff as "stable," with limited improvement under treatment with medication, she nevertheless continued to experience at least moderate symptoms, had difficulty focusing during psychotherapy, had occasional suicidal ideation, and consistently found daily functioning "very difficult." (T at 302, 333, 368, 377, 649, 668, 672, 675, 680, 681, 687, 762).

Moreover, to the extent Plaintiff was "stable" on medication and appropriate during appointments, it notable that she was living in a homeless shelter and relying on her husband for near total support with activities of daily living. (T at 20, 40, 46-47).

The Commissioner's regulations recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [her] ability to complete tasks in the context of regular employment during a normal workday or work week."  20 C.F.R. Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, 17 Civ. 6875, 2019 U.S. Dist. LEXIS 27074, at *31 (S.D.N.Y. Feb. 19, 2019)(noting that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 Fed. Appx. 119, 121 (2d Cir. 2018)(decision to discount opinion based on treatment notes indicating claimant was "well-

groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

The critical question is the extent to which Plaintiff's symptoms would be exacerbated if she was exposed to the demands of competitive, remunerative work on a consistent basis.

The emphatic judgment of both of Plaintiff's long-time treating mental health providers was that she would decompensate, experience marked or extreme impairment, and be unable to perform key duties, including sustaining a regular routine and maintaining attendance on a consistent basis.  (T at 566-69, 1022-24, 1027).

The ALJ's decision to discount those assessments based primarily on the mental status examinations does not reflect the proper application of the law. *See Stacey*, 799 Fed. Appx. at 11 ("It would be improper to rely on these mental status evaluations to conclude that Stacey is capable of prolonged concentration while simultaneously ignoring the contrary conclusion of the very physicians who made the evaluations.").

Additionally, while the non-treating medical opinions provide some support for the ALJ's decision, they are insufficient to sustain it.

Dr. Joanne Rolan performed a consultative psychiatric evaluation in January of 2019.  Dr. Rolan assessed no limitation in Plaintiff's ability to

understand, remember, or apply simple directions or instructions, but found moderate limitation in most of the other domains of mental functioning, including with respect to Plaintiff's ability to sustain attention, interact with others, regulate her emotions, maintain well-being, and sustain an ordinary routine and regular work attendance. (T at 861).  During Dr. Rolan's examination, Plaintiff was depressed, hopeless, anxious, and tense, with impaired memory and attention, and poor insight and judgment. (T at 859-60).

Additionally, Dr. Rolan characterized Plaintiff's prognosis as "[g]uarded." (T at 862).  Most notably, she explained that the results of her examination were "consistent with psychiatric and cognitive problems," which "may significantly interfere with [Plaintiff's] ability to function on a daily basis." (T at 861).

The ALJ found the treating mental health providers' opinions "inconsistent" with Dr. Rolan's assessment and discounted them on that basis. (T 25-26).

The AJ's flawed evaluation ignores that the opinions of Dr. Lumbrano, NP Rivera-Oquendo, and Dr. Rolan are *fundamentally* consistent.  The assessments of every mental health professional who examined or treated Plaintiff noted that she would have significant impairment in her ability to

perform key aspects of work activity – including self-regulation, social interaction, and maintaining attendance. (T at 566-69, 861, 1022-24, 1027).

The difference is in the degree—with the treating providers assessing marked or extreme limitations and the consultative examiner finding generally moderate impairment.  While it is, in the first instance, the province of the ALJ to resolve this sort of conflict, it is insufficient (and inaccurate) to simply characterize the opinions as "inconsistent."

Further, to the extent the ALJ believed the opinion of a one-time examiner regarding the degree of impairment was more persuasive than the assessment of long-time treating providers, she was obliged to provide a sufficient explanation for reaching that conclusion.  The Second Circuit has long cautioned that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)(citing *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)).  "This concern is even more pronounced in the context of mental illness where … a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella*, 925 F.3d 90, 98 (2d Cir. 2019).

Here, although the ALJ concluded that the mental status examinations were more consistent with the moderate level of impairment

assessed by Dr. Rolan the ALJ's reading of (and reliance on) the treatment record was insufficient for the reasons outlined above.

In addition, the ALJ discounted the treating providers' opinions as inconsistent with Dr. Rolan's assessment without (apparently) accounting for the fact that the treating providers' opinions were consistent *with each other*. The ALJ was obliged to account for the fact that Dr. Lubrano and NP Rivera-Oquendo, who both had a long-term treating relationship with Plaintiff, were united in the conclusion that Plaintiff was not capable of meeting the mental demands of basic work activity.  *See Shawn H. v. Comm'r of Soc. Sec*., No. 2:19-CV-113, 2020 WL 3969879, at *7 (D. Vt. July 14, 2020)("Moreover, the ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other.").

Lastly, while the non-examining State Agency review consultant opinions provide some support for the ALJ's decision, they are likewise not sufficient to sustain it.  (T at 63, 67-68, 75-77).

It is well-settled that State Agency review consultant opinions, without more, do not satisfy the substantial evidence requirement. *See Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990); *Gutierrez v. Kijakazi*, No. 21CV3211JPOVF, 2022 WL 16856426, at *16 (S.D.N.Y. Sept. 29, 2022),

*report and recommendation adopted*, No. 21-CV-3211 (JPO), 2022 WL 16856936 (S.D.N.Y. Nov. 9, 2022)

Moreover, the difference is, again, one of degree.  Both State Agency review consultants recognized impairment in Plaintiff's ability to perform the mental demands of basic work activity, although they assessed the degree of limitation to be generally moderate. (T at 63, 67-68, 76-77).  While the Court recognizes the ALJ's responsibility to resolve such conflicts, the ALJ was not at liberty to resolve that conflict in favor of the non-treating opinions absent sufficient support and adequate explanation, which are lacking for the reasons outlined above.  *See Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)("The new regulations cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner.").

B.   *Remand*

A court reviewing the denial of benefits may, in its discretion, remand a claim for further proceedings, or solely for the calculation of benefits. 42 U.S.C. § 405(g) (sentence four) (a reviewing court may enter, upon the pleadings and the administrative record, "a judgment affirming, modifying, or reversing the decision of the Commissioner ... with or without remanding the cause for a rehearing").

Where the record, as here, is complete and contains persuasive proof of disability, "no purpose would be served" by additional administrative proceedings and remand for calculation of benefits is warranted.  *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir.2000).  Here, the record is complete and contains persuasive proof of disabling mental health impairments, as evidenced by multiple medical opinions from providers with the opportunity to observe and treat Plaintiff.  The Commissioner does not articulate any purpose that would be served by further administrative proceedings and this Court finds none.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 29) is GRANTED; the Commissioner's Motion for Judgment on the Pleadings (Docket No. 37) is DENIED; and this case is REMANDED for calculation of benefits. The Clerk is directed to enter final judgment and close the file.

Dated: January 9, 2023                    *s/Gary R. Jones*

                                          GARY R. JONES
                                          United States Magistrate Judge